

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2008

# Amati v. US Steel Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4430

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Amati v. US Steel Corp" (2008). *2008 Decisions*. Paper 56.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/56

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-4430

_____

SHARON AMATI; JANICE FINNEGAN,

Appellants

v.

UNITED STATES STEEL CORPORATION, individually
trading and doing business as UNITED STATES STEEL,
trading and doing business as U.S. STEEL,
trading and doing business as USX,
trading and doing business as MON VALLEY WORKS,
trading and doing business as USS

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-01442)
District Judge: Honorable Maurice B. Cohill, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
on November 21, 2008

Before:  SCIRICA, Chief Judge, RENDELL, Circuit Judge,
O'CONNOR, Retired Associate Justice, U.S. Supreme Court.

(Filed December 23, 2008)

_____

\* Honorable Sandra Day O'Connor, retired Associate Justice of the United States
Supreme Court, sitting by designation.

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

Plaintiffs Sharon Amati ("Amati") and Janice Finnegan ("Finnegan") appeal from the District Court's grant of summary judgment in favor of United States Steel Corporation ("U.S. Steel")on their claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, and related claims. After careful review of the District Court's thorough opinion and the extensive record in this case, we will affirm.

We will not recount the underlying facts of this case, as we write only for the parties, and they are all too familiar with what transpired leading up to the claims in this case. Both plaintiffs allege that they were sexually harassed by Willy Chapman ("Chapman"), who was a Process Leader, and thereafter a Production Coordinator, at the Mon Valley Works of U.S. Steel. He was not the direct supervisor of either of the plaintiffs.

Finnegan complained of numerous contacts and conversations between herself and Chapman that occurred in October and early November of 2003 that made her uncomfortable.[1] Finnegan filed a charge of sex discrimination with the EEOC in January

_____

[1]These included remarks that he could "feel her presence," that she was "glowing," references to his marital state, her "butt," his martial arts prowess, and the sound of her breathing while smoking.

2004, contending that she was sexually harassed by Chapman and that, by not placing her on special assignment, U.S. Steel had retaliated against her for complaining about Chapman.

Amati filed a charge of sex discrimination with the EEOC in December 2003, citing conduct of Chapman dating back to January of that year, including one instance, in or around June 2003, when Chapman exposed himself to her and asked her to perform oral sex.[2]

Both Finnegan and Amati filed additional charges of retaliation in March 2004. Finnegan urged that her superiors were making it hard for her to conduct her union business by failing to return phone calls, pages and messages. She also objected to

---

[2]The District Court described the specific conduct as follows:

> Amati's allegations of harassment include the conduct mentioned above; beginning in January 2003, Chapman began talking to her about his physical strength and demonstrating martial arts holds; on May 5, Chapman asked her about her previous sexual encounters and sexual fantasies; Chapman told her she was "beautiful," "sexy," and "voluptuous" while he was in her office, and stared at her breasts while she was walking by; Chapman "smirked" at her during meetings; Chapman made comments she believed were intimidating. (AF77-81).

> On June 2, Chapman entered her office and asked her if she wanted to have an affair. He then asked her to perform oral sex on him. He pulled his clair over and began rubbing the inside of her thigh, grabbed her breast, and tried to kiss her. Chapman then pulled out his penis and told her to perform oral sex. (AF82) Amati later testified that the incident happened in June, but she was unsure of the date. (AF83).

Chapman's attendance at meetings at which she was present. In addition, Finnegan complained of a series of slights directed only at her, including her not being given a flashlight when others got them, her need to obtain her own work gloves, and her not being told of certain changes before they occurred.

Amati's retaliation claim was based upon a series of instances of an administrative nature, such as the failure of U.S. Steel to provide her additional training, failure to give her 30 days to transfer back to a previous job once she had moved to the roll shop, questioning her about her whereabouts, and her having been "shorted" in her paycheck by four days in December 2003.

Citing the relevant standards under our case law, the District Court concluded that Finnegan failed to establish that the conduct of Chapman about which she complained was severe or pervasive. Moreover, it concluded that U.S. Steel took prompt, immediate action to investigate the matter after her initial complaint. The District Court found the investigation conducted by U.S. Steel to be "thorough." Finnegan contended that U.S. Steel's conduct was not sufficiently remedial because she continued to encounter Chapman at grievance meetings. However, the District Court concluded that there was no evidence that Chapman's behavior at the meetings was inappropriate, and that she had been advised that he would attend certain meetings if he was involved in the employment action at issue. Accordingly, the District Court concluded that Finnegan had failed to support a claim of hostile work environment.

With respect to Amati's claims, the District Court determined that, considering the totality of the circumstances, the instances of unwanted conduct directed at her did not satisfy the threshold of "severe or pervasive conduct" needed for a sexual harassment claim. We need not determine whether we would characterize the conduct as the District Court did. We note, however, that the conduct allegedly directed at Amati was of a character much more serious than that allegedly directed at Finnegan. Nevertheless, we conclude that, under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998), Amati's claim must fail. We agree with the District Court that there is no evidence from which to find that Amati suffered a tangible job action, and, accordingly, under *Ellerth*, U.S. Steel may avail itself of an affirmative defense to liability by showing it exercised reasonable care to avoid the harassment and that the employee failed to take advantage of safeguards. *Ellerth*, 524 U.S. at 765.

The misconduct alleged by Amati began in January 2003, and most of the events complained of appear to have occurred before July 2003 (or, at the latest, August), yet Amati did not inform U.S. Steel of Chapman's conduct until November 2003. Amati failed to avail herself of U.S. Steel's procedure for making a complaint. She was clearly aware of the available procedures and had received training about them. Further, once informed of Amati's claims, U.S. Steel acted promptly, met with her, conducted an investigation, followed leads as to accusations of similar conduct (which proved groundless), interviewed Chapman, and advised him to have no further contact with

5

Amati. As the District Court noted, Amati has not pointed to any facts from which a reasonable jury could conclude that the investigation was anything less than thorough.[3]

In light of the foregoing, we conclude, as did the District Court, that there were no disputed issues of material fact that remained for trial and that summary judgment was properly granted as a matter of law on the sexual harassment claims of both Finnegan and Amati.

With respect to the retaliation claims, we agree with the District Court that neither plaintiff urged an adverse employment action sufficiently significant to survive U.S. Steel's summary judgment motion. To succeed on a retaliation claim, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse." *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 U.S. 2405, 2415 (2006). The Supreme Court there noted that "it is important to separate significant from trivial harms." *Id.* Moreover, a retaliation claim can only succeed if a causal connection exists between the protected activity and the materially adverse action. This can include temporal proximity, or a showing that the employer had developed a pattern of antagonism toward the employee after the protected conduct. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-1 (3d Cir. 2000).

---

[3]Amati did not tell U.S. Steel about certain instances, of which she was aware, of similar conduct directed at others. (See Appx 798, 801, 803). Also, corroboration of the most egregious conduct was equivocal at best. (See App. 912-13, where Ray Michel testified he did not convey to the U.S. Steel investigator what had actually happened.)

6

We agree with the District Court that the conduct allegedly directed at Finnegan and Amati was not materially adverse under *Burlington Northern*. Moreover, there was no evidence adduced from which a jury could conclude that there was a causal connection between the protected conduct of either plaintiff and the allegedly retaliatory conduct of U.S. Steel. With respect to the administrative matters about which Amati complained, U.S. Steel offered explanations that were not shown to be pretextual.

Accordingly, we will not disturb the District Court's grant of summary judgment on the plaintiffs' retaliation claims.

In light of the foregoing, we will AFFIRM the District Court's order in all respects.[4]

_____

[4]Although not discussed hereinabove, in light of the District Court's rulings with respect to the federal claims, its dismissal of the entire complaint, including corresponding violations of the Pennsylvania Human Relations Act, and claims for damages under 42 U.S.C. § 1981(a) available for intentional employment discrimination, was proper.